May it please the Court, my name is Miguel Flores, I am the attorney for the appellant Lucio Berragon-Flores. The issue in this case is does section 1325A5 of the Bankruptcy Code allow a debtor to decide whether to surrender or retain collateral on a claim-by-claim basis. The facts in this case are undisputed. Berragon-Flores, who is the debtor, filed a Chapter 13 plan. He lists two card notes with Evolve Federal Credit Union. The first one, namely a 2011 GMC Sierra with a claim amount of $19,205, that appears in claim number five, and was valued at $13,875 to be paid at five and a quarter percent. That value was never $16,000 Toyota Camry, where $29,573 was owed, as described in Evolve's claim number six. The debtor couldn't afford both vehicles. His plan retains the Sierra and treats it under the plan. The plan also surrenders the Camry to Evolve. Mr. Lucio Berragon-Flores is a maintenance man. He works for a company called Federal Mogul, and keeping the truck was the logical choice for him, as he needed it for work and for personal reasons. There is no argument that Evolve has cross-collateralization clauses on all of its loans. Evolve objected to the plan, claiming that the cross-collateralization language in the loan documents for the vehicles mean that the debtor is not allowed to surrender one vehicle and retain the other, because both vehicles are effectively collateral for both loans, and he must either surrender both vehicles or keep them both in the plan and pay both in full, both loans in full. Just a little bit of procedural history. The bankruptcy court denied this objection. Evolve filed a motion for a new trial. This motion was denied, and Judge Mott from the Western District of Texas Bankruptcy Court lays out a very clear and concise explanation that the debtor's plan does not violate Section 1325A5 of the Bankruptcy Code when it sought to retain the Sierra in the plan and surrender the Camry. The district court reversed the bankruptcy court's decision, concluding that pursuant to the Fifth Circuit's holding in In re Williams, the plan confirmed by the bankruptcy court is impermissible under 1325A5, because it allowed the debtor to retain some of the collateral securing the Camry loan and surrender the rest. We assert here that the decision of the bankruptcy court was the correct one, and so the decision of the district court ought to be reversed. The court confirm a plan if, with respect to each allowed secured claim provided for by the plan. And it gives the debtor three options on how this can be handled. First one is that there's a resolution where the debtor and the creditor can agree. The second one is retain the collateral, paying the creditor through the plan. And the remainder of the debt to an unsecured claim. The debtor exercises options under 1325A5. The debtor retained the Sierra, which had a balance of $19,205, and valuing it at $13,875. By the way, this value was not objected to in the case, as I mentioned before, and it was confirmed that way. This was permissible under section 1325A5B. And with the other claim, which was the Camry, under section 1325A5C, the debtor surrendered this vehicle back to Evolve. Evolve and the district court rely on the Fifth Circuit, N. Ray Williams. This case is clearly distinguishable. In N. Ray Williams, it's different because the creditor made only one loan to the debtor, thus only having one secured claim, securing several items of collateral consisting of one loan. There, the debtor sought to keep some items from the list while surrendering others. There was only one allowed secured claim in Williams. The circuit court in Williams did not hold that the debtor must choose the same option under 1325A5 for two allowed secured claims, which are the facts here. As it was mentioned in the bankruptcy opinion in the case at hand, that to hold otherwise would seem to run contrary to the plain language of the statute, which allows the debtor to choose one option for each allowed secured claim. Evolve, in its brief, cites other decisions in Chapter 12 cases, which are family farmer cases, a much more different and complicated chapter than this Chapter 13 wage earner case that we're in front of today. Neither the Chekovsky case, which is in Connecticut, the Heath case in Arkansas, or the Clark case in Kansas are cases from this circuit. Both the Chekovsky and the Heath case were attempting to sever its cross-collateralized loans while the debtor was able to retain its lien on all collateral that the debtor was keeping under the plan. In our case, Berragon-Flores is not denying that the loans are subject to cross-collateralization. Furthermore, the decisions in Chekovsky and Heath did not involve the debtor surrendering collateral. Just an analogy in our case, so the 2011 GMC Sierra was valued less than what was owed, but had it been valued at an amount higher than what was owed, then any unsecured deficiency from the Toyota and or the third unsecured loan belonging to Evolve could have secured itself and attached itself to the equity of the Sierra. The Clark case involved stripping a lien and severing the bank's cross-collateral liens. This is also not part of the same facts as the case that we have today. Again, Berragon-Flores is not severing, obviating, canceling out the cross-collateralization clause that exists. Furthermore, Evolve argues that the cross-collateralization provisions effectively transform the loan into one obligation. This is from page 8 of their brief. To support this position, Evolve cites one case, Inouye Burney from the bankruptcy court, the District of Alaska. This is a Chapter 7 case with cross-collateralized claims. If Evolve takes the position of effectively transforming the loans into one obligation, then why did Evolve file three separate claims in the case? One for the Sierra, one for the Toyota, and an unsecured personal loan of $4,073, which appears in claim number 7. Furthermore, why were there two motions for relief filed in the debtors' Chapter 13 case, one for relief for the Toyota and one asking for relief for the Sierra? This is evidence that Evolve wants to have its cake and eat it too. Evolve, by its actions in debtors' case, by treating each allowed secured claim, only bolsters the argument in favor of the debtor that the language in 1325A5 should be plainly read. For decades and decades, bankruptcy attorneys have practiced the same way with regard to because the language is clear and it's not vague. So clear, in fact, that even Evolve treats these claims separately by filing separate proof of claims, separate motions for relief. They didn't even mention or were concerned about a third unsecured claim for $4,073. By the way, if Evolve is arguing that these claims are mutually exclusive to each other and each claim is the Sierra and the Camry, then why did they completely ignore the third claim that they had? Aren't they arguing that the claims are mutually exclusive? The reason that this is not mentioned is because Evolve is aware that cross-collateralization exists and it exists when equity can be attached by other secured creditors subject to the cross-collateralization clause. Lastly, if the ruling of the district court was affirmed, the result would not only detrimentally affect the debtors in looking for a fresh start, but also creditors with cross-collateralization claims. Creditors prefer payment with interest and not the collateral that the creditor forecloses on, receiving a fraction of the debt amount at auction and settling for pennies in the dollar. In conclusion, the debtor appellant, Mr. Lucio Beragam Flores, respectfully asked this Court to reverse the ruling of the district court in favor of Evolve and affirm the bankruptcy court decision. Scalia. What's your argument is that Williams is distinguishable because it — one secured claim, which is one loan. The loan consisted of law books. It consisted of saxophone, other different kinds of collateral, but it was all part of one loan. This is distinguishable because our — in our case, there was a contract that was signed for a 2011 Sierra and then there were two separate loans. But by having them cross-collateralized, doesn't that result in the equivalent of one loan? No, it doesn't, because what we're talking about here under 1325 are claims. This is — we're talking about a claim-by-claim basis. And if it was part of one loan, then the problem with that is the creditor had a third loan. They had a third loan. It was an unsecured loan. So why didn't they add that loan as though it were the Camry and the Sierra? It doesn't matter why they didn't. And you have two loans on two vehicles, cross-collateralized, and as a matter of law, that's the equivalent of one loan. The problem with that is we have claims. And under 1325A5, it is very clear that we are talking about each allowed secured claim, one of the claims being the GMC Sierra, one of the claims being the Toyota. Those claims were treated differently in the proof of claims that were filed by the creditor-evolved. They were treated differently when motions for relief were filed in the case. So everything was treated differently as far as the claims are concerned. There's not an argument that there is not a cross-collateralization clause. But the on a vehicle from a claim. The equity from the vehicle on the claim can be attached from other loans from that same creditor onto that loan if it's unsecured. So the question is not—there are two different animals. One animal is the cross-collateralization claim. The other animal is treating each allowed secured claim. So that's the issue that we're dealing with today. And the problem is they're being jumbled up together. And they need to be treated as though you were to read 1325A5, treating each allowed secured claim. What if the Camry had been paid off, but the Sierra had not? There's a claim for the Sierra. If it's cross-collateralized by both vehicles, what situation would be in there? If the vehicle for the Camry had been paid off— But the lender did not release the LEND on the Camry because it was cross-collateralizing the Sierra. That's correct. Then the claim, I guess, that would be filed would be a claim for the 2011 GMC Sierra, which is based on the contract, and any other claims separate from that that can attach to the equity of the 2011 Sierra if need be. But that's still part of one claim, right? No, it's not part of one claim. They're two different contracts, two different claims. No, let's assume my hypothetical. The Camry had been paid off, but the lender said, I'm not releasing my security interest because you haven't paid off the Sierra, and I'm going to keep my LEND on both until you pay off the Sierra. So then they go into bankruptcy. There's a claim made for the Sierra, which is cross-collateralized with the Toyota. Where are we now? That would all depend on what the creditor would do, and at that point, that's a different situation because let's say—I can't speak for the creditor, but let's say what the creditor did, and that would fall in line with In re Williams. What the creditor did at that point, if they filed a claim for the Sierra and had other collateral attached to that, then that makes it one claim. Then that would make it one claim. If you say that the Camry was paid off in full outside of bankruptcy, a creditor does not have to release that lien. Many times they do if the debtor is current on all their loans. They can, but the— As far as you've stated your time, you can bring your statement to a close and— Yes, Your Honor. —take the rest of your time on rebuttal. Yes, Your Honor. I have nothing further at this point, Your Honor. Pardon? I have nothing further to mention. Thank you. May it please the Court. Good morning. My name is Jim Brewer. I'm here on behalf of Evolve Federal Credit Union, the APLE. Evolve Federal Credit Union is a member-owned and federally insured credit union located in El Paso, Texas. It's clear from the questions that went before that the Court understands the facts. They are very straightforward. Evolve made two loans on the same day to the same debtor. One loan was used to finance one vehicle, and another loan was used to finance another vehicle. As has been stipulated, both loans were cross-collateralized, meaning each vehicle secured both loans. Was it just two vehicles or three? There's two. The debtor—the record would reflect the debtor, this particular debtor, who is one person, did schedule four vehicles, but only two are pledged with Evolve Federal Credit Union. I'm going to focus my discussion on three points. First, we believe the In re. Williams case is controlling and on point. Second, that Evolve had two loans instead of just one, as was discussed by the appellant, is a distinction without a difference. The proper focus under Section 1325A.5, the provision that talks about treating secured creditors, focuses on the treatment of the collateral and not how many claims a creditor has. And third, the effect of the bankruptcy court's ruling was to impermissibly sever Evolve's cross-collateral claims—cross-collateral provisions. What about my hypothetical? Let's assume that the Toyota had been paid off, but we still have the Sierra loan cross-collateralized with both vehicles. Under the statute, could the debtor have retained both vehicles through the plan and paid off the Sierra under the plan? Well, if the bankruptcy court was correct, I think the debtor could have retained just one vehicle because the bankruptcy court treated it as two different claims, and different claims being treated differently, kind of disregarding the fact that they are both collateralized by the same collateral. What about my hypothetical? My hypothetical is not the fact—or not the fact—I'm just trying to contrive the statute. Sure. You've got one claim for the Sierra because it hadn't been paid off, but it's still cross-collateralized with both vehicles. Under the statute, could the debtor retain both vehicles as collateral and continue to pay off the Sierra loan? Would that have been an option? I think that would have been an option, and the cram-down provision would have required that the debtor pay the value of both vehicles as opposed to just one. And another hypothetical I was thinking about as you asked your question is, this is a little interesting with two different vehicles financed by two different loans. What if Evolve had two different secured claims secured by a piece of real estate? One piece of collateral, just like in this case, where there's two cars that secure both loans. Evolve has a loan, a first lien secured by real estate and a second lien secured by real estate. Under the appellant's logic, the debtor has an option to treat each claim differently and elect each claim differently. So what is the result of that? Apparently, the debtor could choose to surrender part of the real estate, parcel it up, and cram down the rest, and that is clearly not what the statute contemplates. What does this remind me of what the cram-down provision said? Section 1325A5 has three different options for treatments of secured creditors. One is acceptance, and that can either be by the creditor voting to accept the plan or not voting at all and not participating. Number two is what's called the cram-down statute, and it's similar to Chapter 11, where the debtor, the cram-down refers to valuing the collateral and treating that secured claim and paying that over time with a stream of payments. That's the second option. The third option is surrender. I want to be clear. What the cram-down provision here, under my hypothetical, it would require him to pay off both vehicles immediately or over time? Over time. But he's still got to keep possession of both vehicles. Yes. Yeah, and that's kind of our point, is he has to choose one or the other. He has to either choose to retain all of the collateral or surrender all of the collateral. He does have that choice, but the choices are limited. The statute is very specific. Well, I don't think we should wait. I don't want to spend too much time on hypotheticals, but the hypothetical you mentioned where the real estate and he could carve out, that would be carving out an obligation from the, I don't think that would apply. I mean, that's not the same thing as what he's trying to do here, is it? I think it is because it's two different claims, and their argument is based on the number of claims. But your collateral in your hypothetical is a single piece of land. It's undivided, unlike where you have two separate vehicles from the beginning. That's true. Yes. I guess the point I was trying to make is, from the creditor's point of view, it's one group of collateral secures the claim. And we don't think, simply because part of it is cross-collateralized, it should be treated any differently. Well, how does Williams apply? Williams focused on the treatment of the collateral under the statute. The Williams case basically hung on the different options that are available under the statute. One option is surrender. The surrender statute says clearly that you can only surrender, to exercise a surrender option, you have to surrender all of the collateral securing the claim. That's the Williams holding. And that's why Williams did not permit the debtor to surrender some of the collateral and retain and cram down the rest. That distinction, that holding, is no different in our case. What the debtor is trying to do here is surrender some of the collateral and retain some of the collateral. So the distinction between this case having two loans cross-collateralized and Williams having one loan, you are saying that's not a difference? Correct, because you have to look at each loan and each allowed secured claim, not just the claim, allowed secured claim and test it under the statute. The allowed secured claim is the debt and all the collateral that goes with it. Well, to refresh my memory, is there a case from another circuit that holds what you're advocating? There is a case in the second circuit called In Re Curwen, which is in our brief, that is different in that it is a Chapter 12 case. The Chapter 12 statute is very similar, and I believe it applies. I'm not 100% sure it dealt with cross-collateral. I would have to go back and look at that. I think it was, and 12 was specific but almost identical to 11. Yes. Or 13. Yes. Would it be fair to say your position is there are two claims, and they happen to have the same collateral, but regardless of whether you look at, if you look at each claim, you have to look at the collateral for that claim, even though it may be the same collateral for another claim. Correct. You test each claim and all the collateral that goes with it under the provisions to see if it meets the statute, the statute being there's an option of the debtor can try to retain the property or the debtor can surrender the property. Those are very, very specific, exclusive provisions. Those are two options. For example, he could have given a deed to some non-homestead property as collateral for the Sierra Sure. It could have been any type of collateral. The Williams case, it was a hodgepodge of collateral. He'd have to surrender either the Sierra and the land. Yes. That's what we, that's how we read the statute, and we think that's perfectly reasonable. The debtor is given two options. We think those options should be strictly construed. What is Williams based on? I seem to recall it's based on a district court's decision. Williams looks at the language of the statute, and like I said earlier, it looks at the fact that under the surrender provision, the surrender statute talks about all the collateral must be surrendered. And they took that to mean, well, and I go back, as far as the options are mutually exclusive argument that Williams held, they looked at the overall context of the statute and decided the way it was written, there's basically options A, B, or C have to be complied with, and they found those to be mutually exclusive. You can't mix and match. The debtor argued. What makes a difference, the all collateral or the or? What's that? What makes a difference in Williams' reading of the statute? The fact that the last section is separated with or, or. Or was how they decided that the statute was mutually exclusive. Each section, you couldn't combine the sections. You couldn't surrender some and retain others. I guess they found it based on both reasons, that as well as the fact that the way when you actually look at the options that are available, they speak to treatment of all collateral. The cram down section speaks of retaining all collateral. Thank you, sir. Thank you. Any other questions? I think I forgot 90% of what I was going to say. Thank you. Mr. Flores, you have five minutes on rebuttal. Mr. Brewer talks about these different loans being made contemporaneously at the same time, but they were done at different times. The first one was done for the 2011 CR. The other one was done for the Toyota. It doesn't matter if it was done on the same day or a week apart or a year apart. There were two different loans and two different claims. As I said before, In re Williams is distinguishable because it was one loan. That's what the court held, that on this single loan, you could not mix and match under 1325A, B, and C. Well, aren't you leaving out the fact of cross-collateralization? As a matter of fact and law, that makes it into one loan. Yes, but what we're talking about are claims, and these are claims. There is a claim, and in the record, there are three different claims in the schedules, in the bankruptcy schedules. There is one claim for a CR. There is another claim for a 2016 Camry, and there's a personal loan for $4,073 that the appellee failed to mention. The CR has two things for collateral, and I don't see how the statute lets you ignore that. I mean, just because the collateral may be applied to something else, that CR loan is secured by two things. Where does the statute let you carve out one of the two things? It's the CR claim. Understood, understood. There's language in the proof of claim and the contract with the cross-collateralization clause that basically says all other collateral is attached. But what the debtor did in this case, he surrendered their collateral back to the credit union. Where does the statute allow you to surrender half of the collateral but not the other half? Based on the claim, and 1325A5 needs to be read plainly. It says each allowed secured claim. Each allowed secured claim means the claims, the proof of claims. Let's treat the CR claim separately from each one. What was the collateral for the CR claim? The collateral for the CR claim based on its proof of claim was the CR claim. The cross-collateralization clause only attaches to the equity of the other vehicles if there is equity to attach. Like I said before, if the GMC Sierra, if $30,000 was owed on the Sierra and the Sierra was worth $10,000, there's $20,000 of equity that the Sierra has. If there's any other claims that are filed that are unsecured, such as this Toyota that was surrendered or the third claim, which is a personal loan, those claims can attach to the equity. As I said before, these are two different animals that were discussed. We're discussing a clause, a cross-collateralization clause, and 1325A5, which allows each allowed secured claim to be treated. I hesitate to ask you another question, but in laying out that hypothetical, I don't know whether you were trying to lay out the facts of this case or hypothetical, but you said there was equity left in a vehicle. No, if there was equity in the vehicle. I just gave a hypothetical. If there was equity, the cram down on the 2011 Sierra, it was crammed down to its value. This was a loan that was refinanced from another credit union more than 910 days ago. Therefore, you can use this crammed down statute in order to only have to pay the value with interest, and then the rest would be unsecured. That's the situation that we have here. But had it been different, and had the 2011 Sierra had equity, then that's when the cross-collateralization clause comes into effect to attach itself to that equity, so that the debtor would have to pay more based on the actual value of that Sierra. This is where the cross-collateralization clause comes into effect. So there isn't any carving out. There isn't any obviating of the cross-collateralization clause in that way. I'm missing that point. I'm lost here. The Sierra was not worth – you couldn't sell the Sierra for the value of the loan. In other words, there wasn't equity in the Sierra. No, had there been equity in the Sierra? There wasn't. There was not. There was not. There was no equity for the cross-collateralization clause to attach to anything that had value or equity. I'm not getting at the point of the cross-collateralization clause because you also get the value of the Camry for the Sierra loan. Well, the lender got the value of the Camry when they got it back. The lender already got the Camry loan. Right. And then there was no equity in the Camry, was there? Equity doesn't matter. Equity didn't matter with the 2016 Sierra because – You didn't get the equity out of the Camry for the Sierra loan. That's true, but that doesn't matter with regard to the Toyota because with the Toyota, the rule of cram down didn't matter because that Toyota was purchased within 910 days and it was fully secured. Value didn't matter with the Toyota anyway. That was a fully secured claim. That was not – that could not be used under the 506 provision to cram down. So, really, that doesn't – that argument doesn't matter. Thank you. Thank you. No worries. That concludes our oral argument today. Court is adjourned.